Gholson, J.
In consequence of the rule of the common law, that a chose in action was not assignable, the assignee of a reversion *277 could not maintain an action upon a covenant contained in a lease, against the lessee, though the covenant might run with the land. There was a distinction made between the assignee of the reversion, and the assignee of the lease; and while-tho latter might maintain, and. be liable to, an action upon such a covenant, it was different as to the former. To remedy this, the statute of 32 JEL 8, cap. 34, was enacted, which gave, generally, to the assignee of the reversion the same right of action that the lessor had, upon the covenants in the lease. But this statute did not extend to more personal and collateral covenants; it embraced those only which touched and concerned the thing demised.
It has been decided by this court, that the statute of 32 H. 8, cap. 34, is not in force in this state, and that an assignee of the reversion can not maintain an action upon tho covenants in the lease. But if the covenant be assignable in equity, so that an action might have been maintained in tho name of tho assignor, or relief obtained by a suit in equity, our code of civil procedure operates upon the remedy, even more extensively than the statute of 32 H. 8, cap. 34. For whether the covenant be collateral, or inhere in the land, if it be assigned, the assignee not only may, but, as the party beneficially interested, must sue in his own name. For example, if there bo a contract by a lessee to build a house or a wall upon tho land, at any time, and whether to be used by tho lessee or not, the lessor, in selling tho reversion, may also assign tho benefit of such a contract, and the action of the assignee for a breach would, under tho code, be in his own name.
In the present action, it may be inferred from the pleadings *that the lessor, Powers, has assigned to the plaintiff the covenant to keep tho house insured for tho benefit of the. lessor and lessee. This covenant Powers might well assign; a.nd the plaintiff, being the assignee of tho reversion, and entitled also to the benefit of the covenant, might bring an action for its breach, in his own name, against the lessee of Powers. But does this right of action extend to the assignee of the lessee ? It may be that the lessee would be liable on the covenant, but not the assignee of the lessee. There is a manifest difference between assigning a right of action and creating by assignment a liability to an action. The latter must generally assume the shape of a contract to indemnify, and could not usually affect the rights of the party holding the original claim. It would be really a new contract, and not in the *278 nature of an assignment of another contract. In this view of the liability of an assignee of the lease to the assignee of the reversion, the principle governing the assignment of a chose in action, or the benefit of a covenant, must be thrown out of view, and the inquiry be made on other principles and considerations.
The covenant must run with the land — must be so connected with, be attached to, and inhere in, the land, that the assignee of the reversion or the assignee of the lease, as the case may be, would have a right to the advantage of it, or be bound to perform it. Such is the general principle; but whether a covenant so runs with the land, must depend, in the first place, upon the nature and character of the particular covenant, and of the estate demised, as connected with the respective rights of lessor and lessee, in reference to the subject-matter of the covenant; and, in the next place, upon the intent of the parties in the creation of the estate, as shown by the language of the instrument creating it, construed with reference to the relative position of the parties, and to the subject-matter to which their contract and conveyance is to be applied. Tbe nature and character of the covenant may be such *that it may run with the land; and yet, if it be clearly the agreement of the parties that it shall not so run, it would not be annexed, in despite of the agreement so expressed. And, on the contrary, however clearly and strongly expressed may be the intent and agreement of the parties, that the covenant shall run with the land, yet, if it be of such a character that the law does not permit it to be attached, it can not be attached by the agreement of the parties, and the assignee would take the estate clear of any such covenant.
From this view, it is obvious that, as to the first point, the nature and character of a covenant which may inhere in the land, we are to look at the reason and policy of the law; and, as to the second point, whether it does so inhere as to give a right and create an obligation in the case of assignees, we must look at the intent of the parties creating the estate. The law must say that it may inhei’e, and the parties must say that it shall inhere.
The first point depends upon a question of public policy. It would be mischievous and inconvenient'to allow every species of covenant which wit or caprice might devise, however collateral to the use of the land demised, to be connected with the estate. Therefore, from the earliest times, the distinction between such *279 covenants as may run with the land, and such as are collateral and can not, has been taken and maintained. It has been a matter of some dispute, whether a covenant to insure might run with the land. A covenant, to run with the land, must have for its subject-matter something which sustains the estate and the enjoyment of it, and is therefore beneficial both to lessor and lessee. A covenant to insure, which had for its object the benefit of the lessor only, as where the money paid in the event of a loss would go to him, has been regarded as collateral; but if the money is to be applied to repair or rebuild, then it is in its character like a covenant to repair, which may run with the land. *Under this view, we think the covenant to insure, in the present case, was one which might run with the land.
The second point is one which, in its application to the present case, in view of the decisions and dicta in England and in this country, presents considerable difficulty. When any effect, such as to pass an estate or create an obligation, is dependent upon the intent of parties as expressed in a writing, it is an important inquiry whether the law has prescribed certain words or expressions as essential to be used to indicate that intent. If it bo so, those words must be used, and none others will suffice. The word “ heirs,” in the case of a conveyance to create an estate in fee simple, is an instance. But where the law has prescribed no such words, then the intent of the parties must be ascertained from the whole instrument, inteiqrreted and construed by just and proper rules. In .the latter class of cases, as a general rule, whether the intent be very clearly and plainly expressed, or be ascertained after some difficulty by the rules of construction, can make no difference. It is not a question of degree. The intent is either expressed or it is not, and the effect is the same without reference to the degree of clearness.
In determining whether a particular covenant was intended to run with the land, the fact that its particular subject-matter was not in existence at the time the estate wTas created, is undoubtedly very important and material, and in many instances might be regarded as a controlling consideration. In such a case, though the subject-matter be connected with the land, as a house or wall to be built upon it at a future day during the term, yet if nothing more appeared to indicate the intent, it might be regarded as a personal covenant, and not running with the land. If, however, an intent be shown that the covenant shall run with the land, by *280 binding the “assigns ” in so many words, then the covenant does run with the land, and the assignee of the lease is bound. Thus it was resolved, in the leading case upon this subject: “If the lessee had ^covenanted for him and Ms assigns that they would make a new wall upon some part of the thing demised, that forasmuch as it is to be done upon the land demised, that it should bind the assignee; for although the covenant doth extend to a thing to be newly made, yet is to be made upon the thing demised, and the assignee is to take the benefit of it, and therefore shall bind the assignee by express words.” Spencer’s case, 5 Coke, 16 b.
In the first resolution of the same case it had been said: “ When the covenant extends to a thing in esse, parcel of the demise, if the thing to be done by force of covenant is in any manner annexed and appurtenant to the thing demised, it shall go with the land and bind the assignee, although he be not bound by express words; but where the covenant extends to a thing which is not in being at the time of the demise made, it can not be appurtenant or annexed to the thing which hath no being.” And it was further said as to the ease at bar: “ The covenant concerns a thing (a wall) which was not in esse at the time of the demise made, but to be newly built after, and therefore shall bind the covenantor, his executors, and administrators, and not the assignee, for the law will not annex the covenant to a thing which hath no being.”
Between the first and second resolutions in Spencer’s case, there is an apparent inconsistency; and the unsatisfactory character of the second resolution has been a subject of remark and comment. In the first resolution it seems to be considered that the law will not permit such a covenant as the one under consideration — a covenant to build a wall upon the land demised — -to be annexed to the estate, and run with the land. And if this be so, on the ground that it is to be regarded as a collateral covenant, not proper to be annexed to the land, then the concluding part of the second resolution shows that the agreement of the parties, whether expressed by the word “ assigns ” or otherwise, could not make it a covenant .running with the land and binding upon the assignee. *Yet, in the second resolution, it is said, of a supposed case, if the lessee had covenanted for him and his assigns, it would bind the assignee by express words; and thus showing, apparently, in a ease in which it had been before said, that the covenant could not *281 be appurtenant or annexed to the land, that the parties might make it so. It is to be observed, however, that in the second resolution an element is introduced, not found in the statement of the case in the first resolution, viz: That the building of'the wall would be bene* ficial to the estate demised, and the assignee would have the benefit of it. The result, then, would be, that if the thing to be done upon the land, though not existing at the time of the demise, would be of a permanent nature, connected with the use and enjoyment of the land, and beneficial to the assignee, an intent that it should run with the land and bind the assignee, shown by naming him in the deed, would be effectual.
Thus understood, the two resolutions are not inconsistent, and there may have been some omission in expressing the second resolution which has led to the apparent inconsistency. The question, then, arises, whether an intent to bind the assignee, in the case of such a covenant, may be effectual without the word “ assigns ?” Whether that word is used in the technical sense, and can not be supplied by other words. If, for example, in the case stated, instead of “ for him and his assigns,” it was said “ for him and any other person or persons to whom the estate demised shall be conveyed,” or other equivalent words.
Our conclusion is, that the word “ assigns ” is not used in a technical sense and as the only word appropriate for the purpose, but that equivalent words, or any clear manifestation of intent will suffice. We think the real question must be, the covenant being one which may be annexed to the estate and run with the land, whether such was the intention of the parties, as expressed in the deed. The important consideration is, whether the covenant is annexed to the estate and runs with the land. If this be so, the rights *and liabilities of those who take the estate and possess the land during the term, flow from a privity of estate, and not from any assignment of right or contract. If the covenant can not, or does not, run with the land, no words of assignment can create a privity of estate ; if a privity of estate be created, no words of assignment are necessary. The word “ assigns ” could only show that the covenant was intended to run with the land, for if the covenant were otherwise attached to the land and the privity of estate created, as in the ordinary ease of covenant to repair, that word is shown by all the authorities not to be requisite to bind the assignee of the lease.
*282 Upon principle and authority, “ the law does not require any particular form of words to constitute such a covenant which shall run with the land.” Trill v. Eastman, 3 Met. 121-124. “Any words in a deed, which show an agreement to do a thing, make a covenant.” Williams v. Burrell, 1 M. G. & S. 402-429, Comyns Dig., tit. Covenant. “ To charge a party with a covenant, it is not necessay that that there should be express words of covenant or agreement. It is enough if the intention of the parties to create a covenant be apparent.” Wolveridge v. Steward, 3 M. & S. 561 (30 E. C. L. 312); Courtenay v. Taylor, 6 M. & G. 851; Williams v. Burrell, 1 C. B. 402-430; Great N. Railway Co. v. Harrison, 12 C. B. 576-609; Savage v. Mason, 3 Cush. 500-505.
In the present case, that the covenant to keep the building fully insured, was intended to accompany the estate in the event of any assignment, is, we think, shown as well by the immediate object in view as by the language. The land demised was a vacant lot to be rendered more productive and valuable by an improvement corresponding with those on other lots in the neighborhood. It was to be improved with a view to permanent and continuous business — the rooms were to be kept and used for stores. That the lot might lie unimproved, or the building after its erection be burned and not be rebuilt, either by lessor *or lessee, was never contemplated by the parties. The language in the instrument is, that the lease was made “at and for the rents and conditions ” specified; and it was to be held “ upon the terms and conditions ” expressed. We feel, therefore, authorized, for the reasons given and for others on which it is not necessary to enlarge, to use an expression of the American annotators on Spencer’s case, and say, that the covenant to insure in this case did not relate solely to something not in esse at the time it was made, but related to the land so directly and in such manner that it may bind an assignee of the lessee. 1 Smith’s Lead. Cas., Am. ed. 177.
We are aware that there are authorities which may be regarded as in conflict with the views we have taken, and there are others by which they ai*e sustained. Among tho former we have not overlooked the recent case of Doughty v. Bowman, 11 Q. B. 444; and among the latter we may name Kellogg v. Robinson, 6 Vt. 276. We do not think proper to cite, much less to review'and compare, the authorities which we have examined. The most of them contain a mere repetition of the resolutions in Spencer’s case. It *283 may be noticed, however, that one of the earlier cases (Bally v. Wells) is differently stated in the reports, and that one statement would strongly favor the view we have taken, while the other might not. 3 Wilson, 25; Wilmot’s Notes, 344; Allen v. Culver, 3 Denio, 296, 297.
There are several objections to the petition of the plaintiff, relied on in argument, other than the principal one which has been discussed ; but we think they rather go to show defects in the statement of a'case than a defective case, and should be reached by motion. The connection between the plaintiff and the defendants should certainly appear with greater clearness, and the amount of insurance, as compared with the value of the building, should also be disclosed.' We are satisfied, however, that the decision of the principal and most important question in a way which removes what would be, if otherwise decided, an insuperable *obstaele to a recovery by plaintiff, entitles him to a reversal of the judgment; so that if, in other respects, by clearer averments and by proof, he can make out his case, an opportunity may be afforded.

Judgment reversed.

Brinkerhoee, C. J., and Scott, Sutliee, and Peck, JJ., concurred.